the first case 12 21 14 Hattie Tanner versus Joan Yukins oral argument not to exceed 15 minutes per side miss Miller for the petitioner appellant good morning may it please the court my name is Allison Miller and I along with my co-counsel Mike Bossenbrook represent the petitioner Hattie Mae Tanner in this case at this time I would like the court's permission to reserve two minutes for rebuttal thank you this case involves the appeal of the denial of a motion for relief from judgment under rule 60 b6 in that motion miss Tanner requested the district court to set aside and then reinstate the judgment denying her habeas petition for the purpose of allowing her to proceed with the appeal that respondent's agents unconstitutionally prevented her from timely pursuing and now miss Tanner asks this court to reverse that decision for two reasons first the district court abused his discretion in declining to follow Lewis v Alexander this court's precedent which expressly authorizes the use of rule 60 b6 to set aside and reinstate a judgment to revive a lost right of appeal how does I understand that that's the circuits the circuits precedent even at the time of course our precedent had been commented on by other circuits but now we've got Bowles v Russell how how is you know not withstanding the unfortunate and difficult set of circumstances how do we get around how do we deal with Bowles v Russell you know thank you for the question your honor Bowles v Russell dealt with an equitable extension of time which is unlike what we're asking the court to do here which is to refresh the judgment which would not violate the federal rule of appellate procedure 4a as it essentially resets the timelines and therefore once the new judgment is filed her appeal within the 30-day period just a fancy way of enlarging jurisdiction no your honor respectfully this court at the time it decided Lewis rule 4a 5 it sets forth the time for filing a motion to extend in this court squarely address the issue that reviving the judgment did not violate that dealt with an extension of time so it didn't involve a rule 60 b6 motion it didn't involve the revival of a lost right of appeal in that case the district court directly contravened the statute by arbitrarily extending by three days the 14 day time period in which to file an appeal appeal after an it is unlike the situation we have here Bowles situation was directly covered by the appellate rule 4a 6 which deals with situate should we understand that Bowles doesn't deal with precisely the procedural posture in which we find ourselves but the language of Bowles is pretty emphatic about the proper application of the rule and it just seems that using a procedural device like vacating and re-entering the judgment in order to escape the the rules import and to get around Bowles is really not something a court ought to be doing anymore it respectfully your honor Bowles was dealing with 4a 6 which expressly and specifically covers cases in which the litigant is claiming they fail to receive notice of the final judgment leading to the appeal and so that is covered by the rule but what that rule 4a 6 and Lewis which was decided after the passage of rule 4a 6 leaves open is whether the district court can use rule 60 b6 to revive a lost right of appeal for reasons other than lack of notice which is what we have here and which is what happened in Lewis it was not based on a lack of notice rather it was based on a mistake and this courts later decisions such as FHC equities was very careful to point that out that Lewis did not address a lack of notice case rather it involved a mistake either on the part of the clerk or the post office in entering the case miss Tanner did not she was prevented from complying with the rule by others but she had more control over whether she timely filed then the end of the bowles respectfully you didn't know it all respectfully your honor I would disagree and Bowles he was granted the motion to reopen under 4a 6 and the case really dealt with the extension of three days for the 14 day filing period after that relief was granted and he would have had access to the rule in order to know that this statute and the rule are explicit that it's 14 days rather than the 17 days that was in the district court's order here your honor there were compelling circumstances for why miss Tanner did not file a motion to 5 and the district court abused its discretion in finding that she had failed to explain those circumstances this was a unrepresented pro se inmate who was illiterate and so she was totally dependent on the state to provide her with access to the courts and to assist her in preparing meaningful legal papers and we had the exact opposite thing happen here where she was actually actively prevented from doing that and then to further complicate matters when the district court issued its certificate of appeal ability it did not mention the untimeliness and then as to miss Tanner it appeared that things were proceeding as usual and it wasn't until this court entered its show cause order that she became aware of the dire circumstances and at that point the time period for filing a motion to extend under 4a 5 had already expired and so in Lewis this court addressed the circumstances of an attorney misreading the date stamp on an order as being a sufficient reason for failing to file that rule 4a 5 motion and how much more compelling are the circumstances here for the litigants inability to do so. Going back to Bowles you know not being overruling Lewis here or otherwise preventing the court's use of rule 60b 6 as a vehicle for reviving the judgment as I stated Bowles involved application of rule 4a 6 which specifically applies in cases of lack of notice. Neither Lewis nor this case involve lack of notice. Rule 4a 6 was discretion in cases where parties were claiming that they failed to receive notice of that final judgment but that rule 4a places no limitations on the district court's discretion to revive by refreshing a judgment a lost right of appeal as was recognized by this court in Lewis which was decided after the In terms of this, in terms of Judge Gibbons statement about isn't it cheating a little to vacate and reinstate to revive an action when we find that a that a lawyer has been ineffective in handling an appeal from a let's say let's take this out of the civil range now and go into the criminal range isn't that a vacate a judgment and reinstate it so that the time to file an appeal begins to run again? Did you run across that at all when you were doing your research? I was trying to think of similar situations in which we might revive an action. Your honor there are many cases in which courts have used this procedure of reviving a judgment to restore a lost right of appeal. The Supreme Court actually has a long-standing practice of doing so for parties that misread the procedure of appealing from a three district judge panel from the district court to the Supreme Court and when that's misfiled in the wrong court they do have a practice of vacating and ordering the court to set that aside to restart the appeal period so that even the Supreme Court does have a long-standing practice of reviving lost rights of appeal through this procedure of setting aside a judgment and reinstating it. The reason I asked is that I don't I'm not bragging here but I think I actually when I was on the state bench invented that procedure under Tennessee law so that so that an appeal could run again and I'm struggling to think of the name of the case but yeah I I think at the time I knew that was fairly common in in that situation not common as throughout the litigation. I'm sorry to interrupt you go ahead. I want to follow up actually on Judge Daughtry's question which interests me I wonder if you could answer if there's a more specific answer. We do I mean we there is a when when there's a finding of ineffectiveness with respect to a failure to file a notice of appeal it's pretty common to use the procedural device she referred to and it's I'm wondering if you found anything in the Supreme Court precedent that that relates to that procedure post Bowles. Your Honor respectfully if I may submit a supplemental brief on that issue if it would be helpful to answer that specific question to make sure that we've done the research on that particular issue. So returning to my argument the district court abused its discretion because Lewis is still the law of the Sixth Circuit. It expressly authorizes the use of rule 60b-6 as a vehicle to restore a lost right of appeal. This procedure does not violate the federal rule of appellate procedure rule 4a as it's resetting the period. It's not extending as in Bowles where three additional days were added on to it. It's not an extension it's a resetting and the district court here not only abused its discretion in declining to follow Lewis but it also abused its discretion because Ms. Tanner did establish that she would be entitled to the relief she was seeking under rule 60b-6. The district court actually recognized that she had established exceptional circumstances outside of her control prevented her from complying with rule 4a's time limits. And the district court despite that express finding held that Ms. Tanner would not be entitled to relief even if it did have the authority under Lewis because she had failed to explain why she didn't comply with rule 4a-5's motion to as I've stated before, the record is clear that there is evidence explaining why she did not file that motion. And the circumstances here are much more compelling than in Lewis. And so for that reason, Your Honor, this case is one of those few cases where principles of equity and fairness really cry out for the judgment to be set aside to restore to Ms. Tanner the right of appeal that state actors. And for those reasons, Your Honor, if I may briefly conclude, Ms. Tanner requests this court to reverse the district court's decision and remand with instructions to grant her the relief she seeks so that she may pursue appealing the denial of her habeas petition. Thank you. Good morning, Your Honors. May it please the court, Raina Corbacus from Michigan Attorney General's Office on behalf of Respondent Joan Eugens. The question before this court is whether a federal district court judge abused her discretion in denying petitioner's second motion for relief from judgment under 6db. The abuse of discretion standard, as this court is aware, is a high one. And according to the Supreme Court, Rule 6db proceedings are subject to only limited and deferential appellate review. The district court in this case made two findings. First, that it didn't have the authority to reissue its judgment. And second, even if it did have that authority under 6db, it wouldn't have done so under the circumstances of this case. I'd like to address the district court's second finding first, and it's the state's court didn't abuse its discretion in denying relief, even if it had the authority to do so. Now the district court in this case denied relief under 6db-6, which is the provision that petitioner relied on. But petitioner shouldn't have really been able to rely on that position in the first place. This court has said that if the reasons for relief from judgment can be considered under one of the more specific clauses of 6db, that is 1 through 5, then relief can't be granted under 6. And this court has also said that almost every conceivable ground for relief is covered under the first three subsections. Ms. Miller makes the point that we're dealing with a pro se litigant with limited education. And in this case, if she inserted the wrong rule provision, but it can be fairly ascertained from her papers the relief she's seeking, how should that affect consideration of that issue? Well, petitioner in her second motion for relief from judgment, which was filed through counsel, relied on 6db-6. And it's the state's position that the provisions for relief are covered by b-3. Even petitioner characterizes the misconduct. And the reason why petitioner didn't likely invoke b-3 is because she couldn't meet the time limits under it. There is a one-year timing provision under b-3. And so in that sense, the 6db-6 motion is nothing more than an untimely b-3 motion. And this court has said in general medicine case that a party shouldn't be allowed to escape the time And that's exactly what happened in this case. But even if this court were to find that it did fall under b-6 or that the claim did fall under b-6, the district court did not abuse its discretion by not reissuing its judgment under the circumstances of this case. And the circumstances of this case are essentially that petitioner waited until the last minute to file the notice of appeal. And the notice of appeal is a simple filing. It's a one-page, usually one-sentence filing indicating that the petitioner is appealing. By waiting until essentially the last minute to file it, petitioner in this case was taking a risk. The computer system may fail, power may go out, anything could happen. And by waiting until the very last minute to file it, she was taking a risk. Not only that, but she also failed to move for an extension of time, though. If she couldn't get, if they wouldn't allow her to go to the library to file the motion, the original matter, why should we assume that they were going to allow her to get to the library to file a motion for extension? Well, there's been no allegation that she was prevented from filing or accessing a library. The lockdown took place in this case from December 3rd, according to the petitioner, to December 8th. The notice of appeal was due on the 8th, and that's when petitioner acknowledges that the lockdown ended. And this was a lockdown that it's not been established was undertaken. It was an emergency lockdown. It wasn't undertaken to specifically deprive petitioner of her ability to file a notice of appeal. She hasn't established that there weren't legitimate purposes for the lockdown, but petitioner acknowledges that the lockdown ended on the 8th. At that point, she still had 30 days to file for an extension of time. She didn't do so, and she didn't even explain why she didn't do so. And I think that's part of the reason... That's what drove the district court's alternative ruling. Exactly. That's exactly what... Not the B3 argument that she... Not the B3 argument, but the state does contend that her relief does fall under B3. So I think that was troubling to the district court, just no explanation of why she failed to move for an extension of time. Petitioner says she didn't know until this court's March of 06 order that her appeal was untimely. That isn't true. She knew when she received the notice of appeal on December 8th that it wouldn't be filed that day. She would file it the next day. She knew at that point that it was untimely. Petitioner claims that she couldn't file the extension because she was illiterate and pro se, but these are factors that aren't sufficient to overcome the mandatory and jurisdictional appellate timing rules. Many prisoners need assistance with their legal papers, and some may be less than literate. If that's the test, then why have the rule? And in this case, petitioner did use a legal writer, and despite all of her limitations, she consistently was able to and the Sixth Circuit, including a timely habeas petition, and all she had to do was file a motion to extend. That's another routine filing, and our office often sees motions for extensions of time filed by pro se prisoners. It isn't anything unusual or complicated. She didn't have to file a brief. So that shouldn't be... If here, she may be one of the individuals who's not even able to... I mean, it sounds like she may be somebody who's not even able to write. That, I'm not sure about. I agree that's not in the record, but if you're illiterate, composing even a very simple motion for extension of time might be beyond your capability. Yeah, I'm not sure about that, but she did have legal assistance available to her, and those reasons shouldn't be sufficient to excuse her failure to comply with that. She had legal assistance, but I'm not sure you would say it was effective assistance at counsel. That's just an observation. I mean, she didn't have a lawyer. She had somebody in the prison helping her. She had legal writers at the prison helping her, and they often help pro se prisoners. They are, I believe, experienced legal writers. They were fellow prisoners, but she did have assistance, and she was able to timely file other... Well, maybe she can sue that legal writer for malpractice, you think? She may be able to do that. I'm not sure about that, but in any event, the state contends that it was not abuse of discretion for the district court in this case to find that petitioner failed to show extraordinary... That extraordinary circumstances prevented her from pursuing her appeal. This court has recognized repeatedly that there are strict limits to relief under Rule 60B, that relief under 60B is limited by public policy favoring finality of judgments and termination of litigation. In relief under B6, the provision that petitioner relies on is even more difficult to show. She must show extraordinary circumstances justifying the reopening of a judgment, and Supreme Court has said... Well, didn't the district court... We were told that the district court found that there were exceptional circumstances in this case. I believe what the district court did is it said that... I think it assumed it said that while petitioner may have shown extraordinary circumstances prevented her from timely filing a notice of appeal, she didn't show extraordinary circumstances that prevented her from pursuing her appeal. And... Can you, before you go on with your argument, can you describe this civil case? She apparently has a 1983 case out there. Yes. Can you summarize that for me and tell me where that is in the process? Sure, petitioner apparently filed a civil suit against the MDOC officials in this case. It was in 2007, I believe. She received a judge... She was asking for, I believe, $100,000 compensatory damages and $200,000 in punitive damages. And what was the claim? The claim was interference with access to courts. Okay. And she... And it ended up proceeding to trial in 2012, and she did get a jury verdict where the jury did find a general sense of liability on the part of the two prison officials involved. And the verdict, I believe, is part of this record. Jury essentially found that her constitutional right to access to the courts were violated by these two individuals, and it awarded her less than she thought... Less than she sought. She was awarded $20,000 in compensatory damages and $5,000 in punitive damages. So that case is over. After that case, petitioner filed her second motion for relief from judgment in the district. Can we go back just a minute? So what was the nature of the claim against the two prison officials that impeded her access to court? It was a violation that they prevented her from timely filing her notice of appeal. So it is the facts of this case? Yes, it is the facts of this case. Thank you. Yes. And she has asked this court to take judicial notice of the facts and proceedings in that... She has. My reaction, yes. Yes, yes. And the state contends that some of the items the petitioner had asked the court to take judicial notice of are her assertions of what happened. If the court does take judicial notice, it should also take judicial notice of the verdict form, which kind of indicates a general sense of liability. I don't know that the jury found any malicious or anything beyond like... Well, they found... They awarded her punitive damages. So clearly, they had... It's pretty clear, one, they found in her favor honor allegations. Of course, a jury verdict is never an extensive list of fact findings, but they found punitive damages. So that tells you something about the degree or level of culpability that you thought... That the jury thought they had. I don't know what you... Exactly what use we make of that, but to try to minimize it really doesn't seem to be terribly helpful to you. Well, they did grant her punitive damages significantly less than she thought that she sought, but they did. Your honor is right about that. But what the district court had to consider with respect to the 60B motion was more than just the civil judgment that she had. The district court... The question before the district court was a broader question. It wasn't just the conduct of the MDOC and the two officials. It was what was petitioner doing all this time, and why did she wait till the last minute to file a notice of appeal, and why didn't she move for an extension of time? The conduct by the officials at the MDOC didn't prevent her in any way, or it hasn't been alleged that they prevented her in any way from filing an extension of time. Under your theory, and I understand that you're saying that notwithstanding that there was a finding that they impeded her access to court, that they didn't totally prevent her from accessing court. Yes. But under your theory, and I'm just sort of playing this out, if we say that, and I think your state of the law now, you can never go back in, regardless of the nature of the circumstances, and reopen this judgment where it was not timely in the first instance. But a prison official could totally foreclose a person's ability to access the courts, and if you strung that out long enough, then they would just be forever locked out. They could. That isn't what happened in this case. I understand that, but that's my hypothetical there. Right, right. That didn't happen in this case, and when the district court considered the circumstances of this case, it found that Petitioner wasn't entitled to the extraordinary remedy of relief from judgment under B6. And Ms. Miller says that the district judge made that decision based on her belief that the state of the law prevented her from giving relief. And so, according to Ms. Miller, where a court is mistaken about its authority or its ability to grant relief, then that's enough to set aside or for her to prevail. Well, that was one... I disagree with that. That was one basis for the district court's finding, but even if the district court... And we contend that the district court was not wrong in finding that it did not have the authority. Bowles contains some very unequivocal language emphasizing that courts can't carve out equitable exceptions to jurisdictional requirements, and that was what was involved in this case. And I think that broader language in Bowles does support the district court's decision that appellate timing rules are firm and that parties can't use 60B to reopen the time to file a notice of appeal. I'd like to respond to just two brief points. The first being the contention that this is a Rule 60B3 motion in a Rule 60B6 clothing. That's simply not true. Rule 60B3 is in cases of misconduct of the opposing party, but that rule applies in cases where the misconduct led to the entry of the judgment that's being where a party hid discovery, and so the other party was unfairly deprived of a defense to the order that was entered. That's not what we have here, where the misconduct occurs after the entry of the order. The only case that council was able to locate that contains similar allegations that the unconstitutional actions of the state actors denying access to the courts prevented the petitioner from timely complying with court deadlines was Britford v. Collins. In that case, also analyzed those claims under Rule 60B6, expressly finding that it did not fall neatly within the other five subsections. In that case, Britford also recognized that if the allegations of unconstitutional conduct were true, it would warrant the type of extreme situation that mandates relief under Rule 60B6. And finally, I'd like to turn to the point of petitioner somehow waiting to the last minute to file her notice of appeal. There is in the record, Your Honors, if the court takes judicial notice, that the reason petitioner did not file her notice of appeal until a few days before was because she was dependent on respondent, again, to provide her with a certificate of account activity for her informed papyrus petition that she was filing together with them. And that was the reason for the delay. But nonetheless, she was in the position that she was in, necessitating her to even try to figure out how to file a motion to extend because of the unconstitutional actions of respondents' agents. And that's something that should not be lost on this court. And I see my time is up. Thank you. Thank you both for your argument, and we'll consider the case carefully. Thank you.